24CA0999 Peo in Interest of ZM 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0999
Jefferson County District Court No. 23JV30195
Honorable Ann Gail Meinster, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.M., a Child,

and Concerning B.K.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Kimblery Sorrells, County Attorney, Sarah Oviatt, Senior Assistant County Attorney, Golden, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, B.K.M. (father) appeals the judgment terminating his parent-child legal relationship with Z.M. (the child).  We affirm.

## I.     Background

¶ 2     In June 2023, the Jefferson County Division of Children and Families filed a petition in dependency and neglect regarding the then-seven-day-old child, alleging concerns about the parents' substance use and the child's exposure to illicit drugs.  The Division noted that the child had tested positive for fentanyl, methamphetamine, and marijuana at birth and was experiencing withdrawal symptoms that required neonatal intensive care.  After about a month in the hospital, the child was placed in a foster home, where she remained for the duration of the case.

¶ 3     In August 2023, the juvenile court adjudicated the child dependent or neglected and adopted a treatment plan that required father to address his substance abuse issues, develop stability, comply with all criminal case requirements, and attend family time.

¶ 4     In December, the Division moved to terminate father's parental rights.  In April 2024, following an evidentiary hearing, the juvenile court granted the motion.

## II.    Discussion

¶ 5      Father contends the juvenile court erred by finding that he could not become a fit parent within a reasonable time.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 6      A juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

¶ 7      A parent is unfit if they are unable or unwilling to give a child reasonable parental care.  *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 23.  "Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs."  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 9.  A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also

be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 8    A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates their parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). The determination of a reasonable period is necessarily fact specific, and thus, what constitutes a reasonable time to comply with a treatment plan may vary from case to case. *Id.* But a reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. *S.Z.S.*, ¶ 24.

¶ 9    In determining whether a parent's conduct or condition is likely to change and whether the parent can become fit in a reasonable time, the juvenile court may consider several factors, including whether any change in the parent's behaviors occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *K.D. v. People*, 139 P.3d 695, 700 (Colo. 2006).

¶ 10    When a child is under six years old at the time of filing the petition in dependency and neglect, the juvenile court must

3

consider the expedited permanency planning (EPP) provisions, which require that such children be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024; *see also S.Z.S.*, ¶ 25.

¶ 11    A juvenile court's termination of parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *S.R.N.J-S.*, ¶ 10. We review the court's factual findings for clear error, but we review de novo the court's legal conclusions based on those facts. *Id.*

¶ 12    The credibility of the witnesses, as well as the sufficiency, probative effect, and weight of the evidence, and the inferences and conclusions to be drawn from the evidence, are all subject to the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). We do not reweigh the evidence or substitute our judgment for that of the juvenile court. *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

## B.    Analysis

¶ 13    The juvenile court considered whether father could become fit within a reasonable period and ultimately concluded he could not. The court found that father did not comply with his treatment plan

"in any significant respect" and that he exhibited the same problems addressed in the plan "without adequate improvement" at the time of the termination hearing. The court also found that father had a "long standing history of substance use" as well as a history in the criminal justice system that was largely "related to drug use and the ongoing untreated substance use." The court found that this case quickly followed "a prior dependency and neglect case that resulted in termination" of father's parental rights with respect to two older children and that both cases were "substance use cases." The court also noted that this case was subject to the EPP provisions. The court concluded that the child's newborn status and need for permanency, the stability of her placement in the same home as her two older sisters, and the policy of promptly achieving permanency in EPP cases supported termination of father's parental rights.

¶ 14    The record supports these findings. It shows that although treatment and services were available to father throughout the case, by the time of the termination hearing, he had not successfully resolved the concerns that initially brought the child to the Division's attention. Specifically, the caseworker's testimony and

report indicated that father never completed a substance abuse evaluation or provided any urinalysis tests; had several pending criminal cases, many of which involved "drug charges" and were "picked up" during the pendency of this case; and only attended one family time session with the child, which occurred about nine months before the termination hearing.

¶ 15 As father points out on appeal, he testified that he had largely served the sentences in his criminal cases and started substance abuse treatment about one week before the termination hearing. But the caseworker testified that although father told her he was going to enter a treatment program a week before the hearing, he never signed a release for her to verify that he was actually in treatment. And, even assuming father had entered a treatment program on the eve of the hearing, the juvenile court considered his recent progress but noted that any such progress must be considered in the context of this entire case, the long term nature of father's substance abuse issue, and the resulting child welfare cases. As the court noted, father's claimed engagement started "nine months into an EPP case following the closing of another case that ended in termination." Given these findings, we are

unpersuaded by father's argument that the juvenile court should have allowed him more time to become a fit parent.

¶ 16    The record also shows, as the juvenile court found, that father's issues with substance abuse were "long standing." *See K.D.*, 139 P.3d at 700 (the juvenile court may consider the chronic or long-term nature of the parent's conduct or condition in determining whether they can become fit within a reasonable amount of time). The record indicates that father was a respondent parent in two prior dependency and neglect cases, the first of which opened in 2017. The caseworker testified that both prior cases were opened based on concerns about father's substance use and neither ended with the children returning home to father. The court also took judicial notice of several criminal cases dating back to 2020 in which father was charged with various drug crimes. The caseworker also noted that father had been charged with multiple drug offenses since the filing of the petition in this case.

¶ 17    At the time of termination hearing, the child had been out of the home for her entire nine-month life. In her report, the caseworker stated that the child was "very young" and needed a "safe, sober caregiver." The caseworker also stated that "[a]t this

7

point, [the child] does not even know who her parents are and her parents are not aware of her needs." Thus, based on the parents' lack of engagement, the caseworker opined that termination was in the child's best interests.

¶ 18    In sum, because the juvenile court's findings enjoy record support, we conclude that it did not err by finding that father could not become a fit parent within a reasonable time.

### III.    Disposition

¶ 19    The judgment is affirmed.

JUDGE TOW and JUDGE PAWAR concur.